# Bramlett *v.* Kyle, *et al.*

*Bill to Restrain Foreclosure of Mortgage Under Power.*

(Decided June 16, 1910.   Rehearing denied June 30, 1910.   52 South. 926.)

1. *Homestead; Individual Property of Partner; Homestead; Ex-oneration; Principal and Surety.*—Where a firm mortgaged the firm property to secure a firm debt, and also the homestead of one of the individual members of the firm, and both parties were jointly and severally liable for the debt, the partner owning the home-stead did not occupy the position of surety for the firm as to the homestead property, and hence could not compel the creditors to proceed against the firm property in exoneration of the home-stead; the creditor being entitled at his election to foreclosure against the homestead without reference to the firm property.

2. *Same; Exemption; Realty.*—By mortgaging his homestead to secure a firm debt, a partner waived his homestead exemptions.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Bill by L. W. Bramlett against T. F. Kyle and others, to restrain the foreclosure of mortgage under power so far as his homestead is concerned and to require the creditor to proceed against the firm property in exon-eration of the homestead.   Decree  for respondents and complainants appeal.   Affirmed.

GEORGE D. MOTLEY, for appellant.   Bramlett occu-pied the position of surety so far as his homestead is concerned, and had a right to compel the mortgagee to first exhaust the property of the debtor before proceed-ing against the property of the surety, where no injury results to the mortgagee.—*Thomas v. St. P. M. E. Church,* 86 Ala. 138; *Clark v. Dane,* 128 Ala. 122.   The right to contribution is founded in natural justice and is not restricted to any special delay.—*Bragg v. Pat-terson,* 85 Ala. 233; Bramlett had an equitable lien

since he pays more than his portion of the debt.—*Newbold v. Smart,* 67 Ala. 327. A court of equity will enjoin a sale under power of the mortgage when the mortgagee is proceeding in an improper or oppressive manner, or is perverting the power from its legitimate purpose.—*Struve v. Childs,* 63 Ala. 473; *McAuley v. Otey,* 90 Ala. 302; s. c. 99 Ala. 584. When the principal and surety jointly executed a mortgage to the creditor conveying lands which belong to them separately, the surety has an equity to require that the land of the principal shall be first sold and applied to the satisfaction of the debt.—*Gresham v. Ware,* 79 Ala. 192; *Pac. Guano Co. v. Angelin,* 82 Ala. 492.

O. R. H'OOD and A. R. BRINDLEY, for appellee. Bramlett did not stand in the position of surety as to the homestead or otherwise.—*Bragg v. Patterson,* 85 Ala. 233. The mortgagee has first the right to proceed against any piece of property conveyed by the mortgage.—*Witherington Co. v. Mason,* 86 Ala. 345; 9 Enc. F. & P. 403-5. As to what constitutes real estate, as partnerships assets, see.—*Wear v. Owens,* 42 Ala. 212; *Hatchett v. Blanton,* 72 Ala. 423; *Humes v. Higman,* 145 Ala. 215.

McCLELLAN, J.—In 1906 L. W. Bramlett (complainant) and J. M. Sullivan borrowed, on mortgage of real estate jointly owned by them, of the Merchants' & Farmers' Bank, $7,000. In order to take up the bank mortgage and to satisfy demands against the firm of Bramlett & Sullivan, they, in 1908, borrowed of Amos E. Goodhue $7,500. The security for the note executed by them to Goodhue was a mortgage on the jointly owned real property of Bramlett and Sullivan, and also on separate property belonging to Bramlett, alleg-

[Bramlett v. Kyle, et al.]

·ed to be his homestead. All of the money derived from the Goodhue loan was, it is averred, applied to the joint obligations of Bramlett and Sullivan, and none of it to the individual benefit, it is alleged, of Bramlett. This latter mortgage was assigned to T. S. Kyle. He entered upon its foreclosure, under its power, by the advertisement for sale of only that part of the property, covered by the mortgage, described as being, and which was and is, the individual, separate property of L. W. Bramlett. This provision was incorporated in the mortgage: "The note herein mentioned and this mortgage are given to secure a loan of money made by the said Amos E. Goodhue to the said J. M. Sullivan and L. W. Bremlett. The livery stable lot described above is owned jointly by the said J. M. Sullivan and L. W. Bramlett and the other property is owned individually by the said L. W. Bramlett, but it is intended that all the property herein conveyed shall secure the whole indebtedness."

The indicated effort at foreclosure was restrained on the theory, to be read from the bill, that the equitable doctrine of suretyship and the rights of a surety alleged to be invested in Bramlett required the mortgagee (assignee) to first exhaust the joint property before resorting to the sale of the individual, separate property of Bramlett, described in the mortgage.

While the ruling below might be justified on other grounds, we prefer to determine the appeal upon the consideration to be stated.

The essence of the doctrine attempted to be asserted in this instance is, of course, that the relation of principal and surety, as to Bramlett's individual property described in the mortgage, prevailed in respect of the Goodhue debt and mortgage. Was Bramlett a surety?

Was he or not a principal in the obligation to satisfy the Goodhue debt?

In *Mobile & Ohio Railroad Co. v. Nicholas*, 98 Ala. 92, 128, 12 South 723, 736, it was said: "The relation of surety does not exist when the party contracting is the direct beneficiary and the contract is entered into by him for his own benefit." The doctrine of the quoted case was recognized in the case of *Wimberly v. Windham*, 104 Ala. 409, 412, 16 South. 23, 53 Am. St. Rep. 70. In this case H. T. Wimberly received from Nicholson cotton on which Scott & Co., claimed a lien, and in settlement or adjustment of that claim H. T. Wimberly and Nicholson executed to Scott & Co., a promissory note. This note was transferred by the payees to Windham. Wimberly, on the trial of the suit on the note, asserted that he was a mere surety on the note. Because he was "directly interested in and benefited by the settlement made with Scott & Co."—this being the consideration of the contract sued—Wimberly was held to be a principal, not a mere surety.

The debt to Goodhue was the joint and several obligation of Bramlett and Sullivan. Each was liable for all of it. Each derived from the loan to them a direct benefit. That the sum so received from Goodhue was used to satisfy the bank mortgage debt—a debt to pay which Bramlett and Sullivan were principal obligors—did not alter the status so far as the purpose of this bill is concerned. Bramlett, by means of the Goodhue loan, discharged an obligation, a liability, personal to him, and hence was individually benefited by the operation. To secure the loan he contributed an individual asset; but this act or service, though redounding to the benefit of Sullivan, his co-obligor, could not operate to make him a surety when he, himself, was a principal obligor to the holder of the mortgage debt. He could not, as

to the mortgage creditor, be both a principal and a surety, at one time, in respect of one obligation.

Counsel for appellant cites in brief, as supporting his contention of equitable substance in the original and amended bills, the following of our decisions: *Thomas v. St. Paul Church,* 86 Ala. 138, 5 South. 508; *Clark v. Dane,* 128 Ala. 122, 28 South. 960; *Bragg v. Patterson,* 85 Ala. 233, 235, 4 South. 716; *Newbold v. Smart,* 67 Ala. 326; *Gresham v. Ware,* 79 Ala. 192; and *Pac. Guano Co. v. Anglin,* 82 Ala. 492, 1 South. 852.

The doctrines of these several decisions, in the particulars here appealed to for appellant, are sound. They cannot, because inapplicable, influence the conclusion on this appeal. *Clarke v. Dane, Bragg v. Patterson,* and *Newbold v. Smart,* were instances where the doctrine of contribution, between persons occupying, toward each other, the relation of surety, was involved and necessarily affected the rights of the original debtor parties between themselves. That, as between the obligors, the relation of surety may prevail, notwithstanding all are principals to a common creditor, is well settled in the cited cases, among others *Thomas v. St. Paul Church* reckoned with the kindred doctrine of exoneration—exoneration of the surety's or guarantor's liability by the invocation of equity to compel the principal debtor to satisfy the demand or liability for which the surety stood responsible.

The doctrine of contribution between joint obligors rests, as of course, upon the antecedent fact that the actor co-obligor has discharged all, or more than his share, of the common obligation. It is a proceeding by a co-obligor against his fellow, and is not a process directed against the common creditor. The kindred doctrine of exoneration is the weapon of the surety, whether that relation be affirmed by the contract itself, or be

the product of equity's motive to attain natural justice on the theory that the real beneficiary of the obligation, assumed by the parties (obligors), should discharge the burden; and this proceeding is directed to control and compel the exonerating action of him who is the real beneficiary of the obligation assumed, with him, by him whom equity regards,as between them, as the surety. Neither of these processes for the attainment of equity intends, primarily, the control of the creditor's rights or powers. They each operate, more immediately, upon and between those who are obligated to the creditor. The cases of *Gresham v. Ware and Pacific Guano Co. v. Anglin* each rest in ruling and principle upon suretyship. Neither Mrs. Ware nor Mrs. Anglin, in those cases, derived a direct benefit, as did Bramlett in this instance, from the dealings described therein.

The sum of the matter is that two parties negotiated and secured a loan, on mortgage of property owned by both, jointly, and of property owned by one of them only, and the proceeds were applied to their joint debts to others, and, on default, the one contributing the individual asset to secure the loan invokes the compulsory power of equity to so control the mortgagee's exercise of the power of sale to satisfy his debt, as that the individual asset may be, at least, pro tanto, viz., to the extent the jointly owned property may extinguish the mortgage debt, exonerated from the charge of the mortgage debt, when it affirmatively appears that the mortgagors have become bankrupt, and that the individual assets, contributed to the security described in the mortgage, is the homestead of the complainant, and that it has been claimed, in the bankrupt court, as exempt. Bramlett not being a surety, whatever might be his equities, against Sullivan, for contribution when

the mortgage debt is paid, he cannot maintain a bill under the equitable doctrine of exoneration.

The amended bill foreshadows in averment the effect of an enforced conclusion, in the premises, consistent with the contention for appellant—an effect that would be wrought with no other creditor, save the mortgagee, before the court. It is this: The individual asset, already claimed as exempt in the bankrupt court, would be relieved of the charge of the mortgage debt in a sum commensurate with the net proceeds of the sale of the jointly owned property, and the estate of the bankrupt firm, or of complainant, a member thereof, available to general creditors, would be tolled to the extent the jointly owned property should be taken to satisfy the Goodhue mortgage, and this, in relief of property, covered by the mortgage, to which complainant has asserted his homestead exemptions. It would seem, then, that had the mortgagee been impleaded by other creditors, or by proper representatives of such creditors, consistently with the rules of equity, to compel him to exhaust the property (the homestead in this instance) unavailable to them, before resorting to that available to satisfy both the mortgagee's demand and that of the other creditors, the bill would have possessed equity.— 4 Pom. Eq. § 1414; *Coker v. Shropshire,* 59 Ala. 542. That the mortgagee undertook to do so, voluntarily, accords with the doctrine and operates no injustice to complainant—one not a creditor and not, as we view it, a surety as to the mortgagee.

The fact that the property sought to be relieved, at least pro tanto, of subjection to the satisfaction of the mortgage debt, is, or may be, exempt property, does not create in the mortgagor an equity to control the order of sale of the mortgaged property to satisfy the mortgage debt. He waived his exemption by the inclusion

of the homestead in the mortgage.—2 Jones on Mort. § 1632.

It accordingly results that no oppression or injustice has or will attend the foreclosure entered upon by the respondent Kyle. No equity appears to reside in the complainant upon which the court could or should interfere with the mortgagee's exercise, in his discretion, of the power of sale of a part of the mortgaged property to the end that his debt may be satisfied.

The bill, original and as amended, is without equity. The decree below, effecting that conclusion, must be affirmed.

Affirmed.

SIMPSON, MAYFIELD, and EVANS, JJ., concur.


