# Hudson Trust Co. v. Elliott.

*Bill to Enjoin Execution.*

(Decided June 30, 1915. 69 South. 631.)

1. *Bills and Notes; Parties; Liability; Primary and Secondary.*— The maker of a note to whom the consideration moves, is the person primarily liable thereon, while an indoser is secondarily liable.

2. *Same; Parties; Surety; Discharge.*—The allegations considered together with the evidence, and it is held that the action of the indorsee did not release the indorser of the note, and the lien against the maker was not forfeited.

[Hudson Trust Co. v. Elliott.]

3. *Same; Enforcement of Judgment.*—Under section 4112, Code 1907, on the application of the surety, the indorsee of the note who had obtained judgment thereon against the maker and against the indorser, must proceed to collect the judgment by execution, and equity will restrain the indorsee from proceeding to enforce the judgment against the indorser where the maker had sufficient property, notwithstanding sections 5384-5389, Code 1907, for under section 5386 the remedy is merely cumulative and does not exclude other remedies conferred by statute, or existing at common law.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Bill by J. M. Elliott, Jr., revived in the name of his executrix, against the Hudson Trust Company, to enjoin execution, and to require the making of the money on the jdugment out of the property of the maker of the note. From a decree declining to dissolve the temporary injunction, respondent appeals. Affirmed.

GOODHUE & BRINDLEY, for appellant.

HOOD & MURPHREE, for appellee.

THOMAS, J.—This appeal is from a decree denying appellant's motion to dissolve an injunction for want of equity. The original bill was filed by J. M. Elliott, Jr., who died after the injunction had been obtained, and the cause was revived in the name of his executrix.

The facts, briefly stated, are that in the year 1912 the Alabama Iron & Steel Company, a corporation, executed notes, payable to J. M. Elliott, Jr., aggregating $8,000, which he indorsed to the Hudson Trust Company for value. Not being paid at maturity, the Hudson Trust Company, on the 6th day of February, 1913, recovered a judgment against the Alabama Iron & Steel Company as the maker of the notes, and on the 21st day of April, 1913, recovered a judgment against J. M. Elliott, Jr., as the indorser thereon. After the rendition of these judgments, certificates were duly filed and recorded in the office of the judge of probate of Etowah coun-

ty, as provided by the statute, for the perfecting of judgment liens against the properties of · the Alabama Iron & Steel Company and of J. M. Elliott, Jr.

It is further alleged that on· the 8th day of May, 1914, the Hudson Trust Company ·caused an execution to issue on the judgment against Elliott, and to be levied on his properties; that at the time of the levy of the execution, and the filing of the bill, the Alabama Iron & Steel Company was the owner of 4,700 acres of valuable iron ore and mineral lands in Etowah county, which were free from all lien and incumbrance, except the lien acquired by the filing of the said certificates of judgment of the Hudson Trust Company; that. after the recovery of the judgment against the Alabama Iron & Steel Company, and before the recovery of the judgment against Elliott, he made known to the attorney of record of the Hudson Trust Company the fact of this ownership of the mineral lands, offered to point out these lands to the attorney of the Hudson Trust Company, and requested him to proceed against this property of the makers of the notes for the collection of said judgment. Its attorney failed or refused to do this, and instructed the clerk of the· court not to issue execution on the judgment against the Alabama Iron & Steel Company, but to issue execution on the judgment against Elliott, the indorser of the notes of said company.

It is further alleged in the bill that E. R. Chapman is the president and executive officer of the Hudson Trust Company, and is also vice-president of the Alabama Iron & Steel Company; that "the inequitable and unjust treatment of orator, and the levy of the execution on orator's property, as herein set out, and the instruction of the clerk not to issue an execution against said Alabama Iron & Steel Company, is, as orator is informed and believes, and therefore charges on information and

belief, the result of an understanding or agreement between said Hudson Trust Company and said E. R. Chapman that an execution would not be levied on the property of said Alabama Iron & Steel Company, but that one would be sued out and levied on the property of orator, thereby compelling orator to pay said judgment. If said Hudson Trust Company, as requested by orator, had sued out an execution on its judgment against said Alabama Iron & Steel Company, and caused the same to be levied on the property of said company, said judgment against said company could have been collected before the rendition of said judgment against orator."

It is averred that the action taken with reference to these judgments was in pursuance of some secret understanding or agreement between said Hudson Trust Company and Alabama Iron & Steel Company for the purpose of compelling the indorser, Elliott, to pay said debt, notwithstanding the appellant, without inconvenience or delay, could have collected its judgment against the maker of the notes; that the effect of such conduct was to unnecessarily oppress, and to obtain an undue and inequitable advantage over, Elliott.

(1) It is elemental that the judgment creditor can have but one satisfaction of the debt, and that the maker, and not the indorser, of notes is prima facie the party to whom the consideration moved. The person primarily liable on the instrument is the person who, by the terms of the instrument, is primarily required to pay the same. All other parties are secondarily liable. —Code, 1907, § 5139; Byles on Bills (6th Ed.) 247. In the case at bar, the pleadings show that the party who is primarily liable, and who must ultimately pay, is the maker of the notes, and not the indorser of the same.

(2, 3) The clerk is required by the statute (Code, §§ 4079, 4080) to issue execution on all judgments in favor

of the successful parties "as soon after the judgment of court as practicable, within the time prescribed by this Code, unless otherwise directed."—*Davidson v. Wiley,* 31 Ala. 452; *Henderson v. P. & M. Bank,* 178 Ala. 420, 428, 59 South. 493. The sheriff must execute the writ with diligence, and, if practicable, perform the mandate thereof, and make return of his acts to the clerk.—Code, § 4098; *N. Ala. Ry. Co. v. Lowery,* 3 Ala. App. 514, 57 South. 260. When execution issues against two or more persons, one of whom was surety on the contract before judgment, the sheriff must levy on the property of the principal first, if any can be found in the county, on the application of such surety; and he may require of the surety affidavit of the fact of suretyship which he must file with the execution.—Code, § 4112.

Section 4112 of the Code of 1907, was first codified in the Code of 1852, of which it formed section 2448. Since then, the question of the release of the surety by the act of the creditor has many times been considered by this court. In *Winston v. Yeargin,* 50 Ala. 340, it was declared that if an execution is issued against a surety and his principal, and is levied by the direction of the surety on property of the principal sufficient to satisfy it, and the creditor causes it to be returned without a sale, and the property is released without the consent of the surety, the latter is thereby discharged. The court there said: "Perhaps no principle or rule of law can be evolved out of the matter. * * * Each case should be decided on its merits, according to the justice or equity of the circumstances attending it."

Chief Justice Brickell, citing *Winston v. Yeargin, supra,* says the doctrine of the courts is that the creditor is a trustee of his execution for the benefit of the surety, and though not bound to active diligence, though he may, if he will, remain passive, yet, if he voluntarily inter-

feres, and by his own act releases the lien, the surety is discharged. Even after judgment against principal and surety jointly, the principle is settled that the relation of principal and surety continues, and if the creditor enters into an agreement, binding him, by which time is given to the principal, without the consent of the surety, he is discharged.—*Knighton, et al. v. Curry, et al.,* 62 Ala. 404, 410; *Comegys v. Booth,* 3 Stew. 14; *Carpenter v. Devon,* 6 Ala. 718; *White, Adm'r, v. Life Ass'n,* 63 Ala. 419, 425, 35 Am. Rep. 45.

In *Springer v. Toothaker,* 43 Me. 381, 69 Am. Dec. 66, it is declared that although the plaintiff was not legally bound to use active diligence in collecting the debt of the principal, and the surety would not be discharged by reason of his delay in this matter, and although the plaintiff might have discontinued proceedings against the principal debtor, yet it would be clearly inequitable to allow him to abandon an absolute lien or security upon the principal which he had obtained as the result of those proceedings, and to retain his hold upon the security for the whole debt.—2 Am. Lead. Cas. 256.

In the case at bar, not only was time sought to be given the principal debtor without the consent of the party secondarily liable, and even against his objection, but (it is charged) the judgment creditor was seeking to protect the principal and to collect the amount due on the judgment from the party secondarily liable. It is insisted that this conduct of the judgment creditor should be declared a release of the appellee as indorser of the notes and as judgment debtor thereon.

The averments of the bill show that the properties of the Alabama Iron & Steel Company, subject to the lien of the judgment, have not diminished, but that the Hudson Trust Company may now have, by a sale of the Steel Company's properties, a satisfaction of its

judgment. If appellee should pay the same, she would have the same right of subrogation, and the properties of the Steel Company are not diminished, nor incumbered by subsequent superior liens or equities. There is therefore no good reason why the Hudson Trust Company should be declared to have forfeited its lien of execution or recorded judgment against the properties of the Alabama Iron & Steel Company, or the properties of the estate of J. M. Elliott, Jr.

However, under the averments of the bill, the Hudson Trust Company is required to proceed on its judgment against the properties of the Alabama Iron & Steel Company for its primary satisfaction, out of the properties subject thereto, of appellee. This is in accordance with the natural justice of the case that led to the enactment of section 4112 of the Code of 1907, the evident purpose of which was to compel creditors to recognize the right of those persons who occupy the relation of surety, when it can be done without inconvenience and loss.

The judgment creditor, having fixed his lien on the property of the party primarily liable, and having abundant property subject to the satisfaction of the judgment, will not be permitted by a court of equity to prohibit execution on this judgment, to prevent collection out of the party thus primarily liable, and then enforce a lien on the property of the indorser or party secondarily liable, and oppressively collect from him. This is but another application of the equitable doctrine that the principal debtor may be compelled to exonerate the surety from liability, by payment from the principal debtor's moneys or properties, when no right of the creditor is prejudiced thereby.—*West Huntsv. Cotton Mills v. Alter,* 164 Ala. 305, 309, 51 South. 338; *Thomas v. St. Paul M. E. Church,* 145 Ala. 176, 39 South. 913,

117 Am. St. Rep. 31, 8 Ann. Cas. 78; *Bramlett v. Kyle, et al.,* 168 Ala. 325, 329, 52 South. 926; 1 Story, Eq. Jur. § 327; Brandt on Suretyship, 245; *Johnson v. King,* 57 N. Y. 333; *Cleveland v. Southard,* 25 Wis. 479.

The creditor having liens on the properties of the party primarily liable, and on those of the surety, for the same debt, the surety has an equity, on foreclosure, to require the property of the principal to be first applied to the payment of the debt.—*Pacific Guano Co. v. Anglin,* 82 Ala. 492, 1 South. 852; *Bramlett, et al. v. Kyle, et al., supra.* The fact that the liens were created by mortgage, rather than by judgment, can make no difference in the application of the principle involved. It grows out of the duty of the principal debtor to pay the debt and extinguish the alternative liability of the surety. It is the duty of the creditor to recognize this right when it can be done without injury to himself. The theory of the bill is supported by considerations of natural justice and by authority of this court.

While article 1 of chapter 125 of the Code of 1907 (page 1205) affords ample protection to the surety against the payment of the debt of his principal, section 5386 prescribes that the remedy there afforded is merely cumulative, and does not exclude other remedies conferred by statute or existing at common law. The decree of the chancellor was in accord with this view, and his ruling is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.