# Thomas *v.* St. Paul's M. E. Church.

*Bill in Equity for relief against Incumbrance, on Exchange of Lands.*

1. *Exchange of lands; equitable relief against outstanding incumbrance.*—On an exchange of lands, conveyances being mutually executed with covenants of warranty against incumbrances, if one of the tracts is incumbered with an outstanding vendor's lien, the party who acquires it by the exchange may come into equity for relief, by requiring the other party to remove the incumbrance, or to give indemnity against it.

APPEAL from the City Court of Birmingham, in equity.
Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 13th February, 1888, by George L. Thomas and J. C. Kyle, against the St. Paul's M. E. Church, a private corporation, Trim Smith

[Thomas v. St. Paul's M. E. Church.]

and others as trustees of said church, W. J. Vann and S. E. Laird; and sought equitable relief against an outstanding incumbrance on a tract of land, which the complainants had purchased from said church trustees, or obtained in exchange for another lot conveyed by them to said trustees, and on which there was at the time an outstanding vendor's lien in favor of said Vann and Laird; and it also prayed a reformation of the conveyance to the complainants, by correcting a mistake in the description of the land. On final hearing, on pleadings and proof, the court rendered a decree correcting the mistake, but refusing all other relief; and this decree is now assigned as error by the complainants.

WEBB & TILLMAN, for appellants, cited Brandt on Suretyship, §§ 21, 192, 204–5; 2 Amer. Lead. Cases, 412; *Irick v. Black*, 2 C. E. Green, 17 N. J. Eq. 189; *West v. Chasten*, 12 Fla. 315; Story's Equity § 639; *Bishop v. Day*, 37 Amer. Dec. 582; *King v. Baldwin*, 8 Amer. Dec. 115; *Pride v. Boyce*, 33 Amer. Dec. 78.

STERRETT & CAMPBELL, *contra*, cited *Boykin v. Bank*, 72 Ala. 262; *Cullum v. Br. Bank*, 4 Ala. 21; 1 Lead. Cases Eq. (White & Tudor), 500; 1 John. Ch. 213; *Abbott v. Allen*, 2 John. Ch. 519; *Refeld v. Woodfolk*, 22 How. 318; *Patton v. Taylor*, 7 How. 133; 1 N. J. Eq. 426; 5 John. Ch. 79; 22 N. J. Eq. 76; 29 N. J. Eq. 444; *Magee v. Mc-Millan*, 30 Ala. 420; 12 N. J. Eq. 50; 2 Dev. Deeds, 916-18; 1 W. & T. L. C. Eq. 142-50.

CLOPTON, J.—On November 1, 1886, appellants and their wives duly signed a deed, conveying to certain named persons, as trustees of the St. Paul M. E. Church, which is a corporation, a lot of land in the city of Birmingham, described as number seventeen in block thirty. On the sixth day of the same month, the individuals to whom the deed above mentioned was made duly signed, as trustees for and on behalf of the church, and by their authority, a deed conveying to appellants another lot in the same city, described as number five in block fifty-two. After being duly acknowledged, the deeds were delivered by the respective grantors to the grantees respectively. The *aliunde* evidence, and the conveyances on their face, show that the transaction was an exchange of lots, each lot constituting the considera-

tion price of the other. The conveyances contain the usual covenants of warranty, including a covenant that the premises are free from incumbrances. The lot conveyed to appellants was purchased by the trustees from Vann and Laird, September 20, 1885, who executed to them, in their capacity of trustees for the church, a warranty deed. They paid one half of the purchase-money, which was twenty-two hundred and fifty dollars, and for the other half gave their note, payable twelve months thereafter, with interest. From the recitals of the deed it appears, that Vann and Laird retained a vendor's lien, as security for the payment of the note. The bill, which is filed by appellants, specially prays, that the amount of the purchase-money unpaid and due Vann and Laird be ascertained; that a lien be declared on lot number seventeen for its payment, its sale decreed unless paid, and that lot number five be exonerated from the incumbrance of the vendor's lien; also, for general relief.

The complainants, as appears from the record, introduced in evidence a mortgage on lot number five, executed to H. D. Cowden by the persons who were trustees of the church, in their individual names and capacity, to secure the payment of a note for one thousand dollars, which mortgage was subsequently transferred by Cowden to Vann and Laird. What connection this mortgage has with the sale by Vann and Laird to the trustees, is not made to appear. We are left to surmise, that it was executed in lieu of purchase-money owing by them to Cowden, from whom they bought the lot, and was intended as evidence of the amount of the unpaid purchase-money due by the trustees to Vann and Laird. We shall give the mortgage no further consideration, it being immaterial; as it sufficiently appears from the recitals of the deed, which are *prima facie* evidence against the trustees and the church, that there is a large portion of the purchase-money unpaid, which is a charge or incumbrance upon the lot. The trustees, *eo nomine*, the church in its corporate capacity, and Vann and Laird, are made defendants to the bill.

The equity of complainants is rested on the proposition, that under the circumstances, and on the facts, the lot which they received in exchange for the lot conveyed by them to the trustees, occupies the position of surety or guarantor for the unpaid purchase-money; which constitutes a lien or incumbrance on the lot conveyed to them by the trustees. No principle of equity is more familiar, or more firmly established,

[Thomas v. St. Paul's M. E. Church.]

than that a surety, after the debt for which he is liable has become due, without paying, or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby. The principle has been extended to cases of pledged or mortgaged property. It is well settled, that when the owner mortgages or pledges his property for the debt of another person, such property occupies the position of a surety or guarantor, and the owner is entitled to all the rights of an individual surety under similar circumstances, though he has not made himself personally liable for the debt.—Brandt on Surety, §§ 21, 192.

It would be difficult to specify or limit the variety of circumstances to which the doctrine has been, or may be applied. When a mortgagor conveys the mortgaged premises, subject to the mortgage, he only conveys the equity of redemption; and the discharge of the mortgage, which, in such case, is the equitable duty of the grantee, is preliminary and requisite to the acquisition of an interest by him. Founded on this reasoning, it has been repeatedly held, that the effect of the transaction, in equity, was to make the mortgaged premises the primary fund for the payment of the debt, and to place the mortgagor in the situation or relation of a surety—to change his position from that of principal and only debtor, as created by the original contract, to that of guarantor. *Johnson v. King*, 51 N. Y. 333; *Cleveland v. Southland*, 25 Wis. 479. Also, the mortgagor may convey the premises, not only subject to the mortgage, but in such manner that the grantee assumes the payment of the mortgage debt, and thus renders himself personally responsible. In such case, not only is the mortgage property the primary fund for the payment of the debt, but the grantee becomes the principal debtor, and the mortgagor the surety, as between themselves. If the mortgagor pays the debt, he is entitled to an equitable assignment, or to subrogation, for his reimbursement. In either case, whether he conveys the premises subject to the mortgage, or in such manner that the grantee assumes the debt, the grantor is entitled, as against the grantee, to all the rights of a surety, including the right of exoneration from personal liability, to the extent of the value of the property conveyed.

The right of the surety to be exonerated from liability is founded on equitable principles—the primary duty of the principal to pay the debt, and it being unreasonable, that the

.[Thomas v. St. Paul's M. E. Church.]

surety should be burdened with the liability, a cloud hanging over him, at the will of the creditor, and the risk of ultimate loss. The doctrine has been expressed by Lord Redesdale as follows: . "A court of equity will also prevent injury in some cases, by interposing before any actual injury has been suffered, by a bill which has sometimes been called a bill *quia timet*, in analogy to proceedings at the common law, where, in some cases, a writ may be maintained before any molestation, distress or impleading. Thus, a surety may file a bill, to compel the debtor on a bond in which he has joined to pay the debt when due, whether the surety has been actually sued for it or not; and upon a covenant to save harmless, a bill may be filed to relieve the covenantee under similar circumstances."—M:t. & Tyl. Eq. Pl. 240. On the principle thus declared, it was held, that a surety who was secured by a bond of .indemnity, entered into by the principal debtor's father, who died, having devised certain property upon trust to pay the debt, and the executors having no funds in hand, and being unable, under the will, to raise the money by sale of any portion of the testator's estate except under a decree of the court, was entitled to maintain a bill against the executors, for administration, payment of the debt, and indemnity.—*Wooldridge v. Morris*, L. R. 6 Eq. Cas. 410.

In the sale and conveyance of lands, the parties to the transaction may, by the conditions in their contract, or by the covenants in the deed, regulate and control the equities and relation between themselves. A mortgagor can not, by agreement with a third person, impair or prejudice the rights of the mortgagee, without his concurrence; but he may contract in a manner so, as between him and his grantee, to render himself primarily, and the premises conveyed secondarily liable for the mortgage debt—in such manner as to make it his duty and obligation to exonerate the land, and to vest the grantee with the rights growing out of the relation, which is in the nature of that of principal and surety. On the same principle, a grantor, who conveys land incumbered with a vendor's lien, may, under similar circumstances, contract with like effect. The relation between the parties depends on the conditions of the contract, and the character of the covenant. *Refeld v. Woodfolk*, 22 How. 318, on which counsel for appellees rely, though apparently, when cursorily read, is not really opposed to this view, but rather recognizes the doctrine. The complainant in that case had

[Thomas v. St. Paul's M. E. Church.]

made an executory contract for the purchase of unimproved lands, a portion of the purchase-money being payable in cash, and the remainder in installments secured by his notes and bond  The vendor and his wife obligated themselves, when the payments should be completed, to convey to him the land in fee simple, "by a good and sufficient deed, with general warranty of title, duly executed according to law." He refused to accept a deed containing a covenant of warranty, which was offered him on the 'completion of the payments, because the lands had been previously mortgaged by his vendor; and thereupon filed a bill in equity, praying that the title be examined, and the defendants required to remove the incumbrance, or give him effectual indemnity against it. It was held that, "where a contract for the sale of land, with an agreement to convey by deed of general warranty, has been executed by the delivery of possession and payment of the purchase-money, the purchaser can not, in the absence of fraud and concealment, refuse to receive a deed with proper covenants, or go into chancery to obtain indemnity against incumbrances." The contract of sale was executory; and the suit was regarded as in the nature of a suit for specific performance. It is said in the opinion, quoting the language of Lord Eldon: "If it turns out that the defendant can not make a title to that which he has agreed to convey, the court will not compel him to convey less, with indemnity against the risk of eviction. The purchaser is left to seek his remedy at law, in damages for the breach of the agreement." To compel a conveyance of the lands, with indemnity against incumbrance, would have been to compel the defendants to perform a contract which they had not made.

It is further said: "If the contract has been executed by the delivery of possession and the payment of the price, the grounds of interference are limited by the covenants of the deed; or to cases of fraud and misrepresentation." And referring to a case in which Lord Eldon made an order, that the purchaser should be compensated for the difference in the value between the title contracted for and the one exhibited; and if that difference could not be ascertained, the master should settle the security to be given by the defendant as indemnity against disturbance or eviction; it is said, there were conditions in the contract which authorized the order. The opinion rendered by the eminent and distinguished jurist, Mr. Justice CAMPBELL, manifestly recog-

nizes the principle, that the rights and equities of the parties may be regulated and controlled by the stipulations of the contract, or by the particular covenants.

It should also be observed, that the agreement sought to be enforced in *Refeld v. Woodfolk*, provided only for a general warranty of title—not for a specific covenant against incumbrances. The difference between these covenants is well understood and defined. The former operates in the future, and is in effect a covenant for quiet enjoyment—against the consequences of a defective title, or disturbance in the enjoyment of the premises. An eviction, or disturbance in the possession, tantamount to an eviction, is essential to a breach of the covenant. It is not broken by any outstanding incumbrance. An unqualified covenant against incumbrances operates *in presenti*, and is broken as soon as made, if there is an outstanding incumbrance. When the incumbrance exists at the time of making the deed, and the loss or damage is inchoate, an action at law is an inadequate remedy. Unless the grantee purchases in the incumbrance, he is entitled to recover only nominal damages.—*Anderson v. Knox*, 20 Ala. 156; *Caldwell v. Kirkpatrick*, 6 Ala. 60.

A covenant against incumbrances obligates the covenantor to discharge or remove the incumbrance, whether or not known to the grantee. Such covenant is of the character which furnishes ground of interference, and falls within the classes of cases in which a court of equity will lend its aid to protect a party against apprehended loss, or to relieve him and his property from an unreasonable and oppressive responsibility. It binds the grantor primarily to remove an incumbrance, which the grantee, on his failure, may be compelled to discharge, to protect his interests—a covenant to save him harmless against loss or damage, which may be occasioned thereby. It is, in its effect and operation, a contract of indemnity. The reason of the doctrine, which clothes a mortgagor, who conveys the mortgaged premises subject to the mortgage, with the right of a surety to be relieved from liability for the debt, for which he is bound, or indemnified against it, applies with equal force to the converse case, where the mortgagor conveys the premises by deed containing a specific covenant against incumbrances. The right of the grantee, in such case, to have his property exonerated from liability, or to indemnity, rests on the same equitable principles, on which is founded the right of a surety on a money demand, under similar circumstances; the

[*Thomas v. St. Paul's M. E. Church.*]

equity of which is the same.—3 Pom. § 1205, note 3. Insolvency of the grantors, or danger of irreparable injury, is not an essential element in complainants' title to relief. The court will interfere in a proper case, though the principal may be able to respond in damages.—*Irick v. Black*, 17 N. J. Eq. 189.

It may be said generally, that on well established principles, equity will interpose, in some proper mode, determined by the circumstances of the case, for the aid or protection of a surety or covenantee, whenever there is an outstanding, enforceable demand, which it is the primary and present duty of the principal debtor, or the covenantor to pay, and which the surety and covenantee may be compelled to pay, either in consequence of his personal responsibility, or to protect his interests. The note given to Vann and Laird for the purchase-money by the grantors of complainants, had become due before the bill was filed. It was an incumbrance existing at the date of their deed to complainants. The deed contained a covenant that the premises are free from incumbrances, which obligated the grantors, primarily and presently, to discharge the vendor's lien, of which the complainants had constructive notice, by the registration of the deed made by Vann and Laird. When the deed contains a covenant that the granted premises are free from incumbrances, and there is an incumbrance existing at the time of making the deed, in a suit by the grantor to foreclose a mortgage for the purchase-money, the amount of such incumbrance will be deducted from the amount due on the mortgage, or, if it can not be deducted, the suit will be stayed until the incumbrance is removed, or the premises released from its charge.—*White v. Stretch*, 22 N. J. Eq. 76; *Dayton v. Dusenberry*, 25 N. J. Eq. 110. By parity of reason, and on like equitable principles, when possession has been delivered, the purchase-money paid, and a deed executed containing a specific covenant against incumbrances, the grantor may be compelled to pay off or remove all existing incumbrances, or to give the grantee suitable indemnity. It would be unreasonable and unjust, that premises so situated should remain under such burden and cloud during the time the law allows the lienor before he is required to become active.

The City Court possesses better opportunities and advantages than we have, to determine the special relief, which should be granted. We shall therefore leave to that court

to settle, whether the grantors of complainants shall be compelled to release the premises from the incumbrance, or give indemnity, and the kind and amount thereof.

Reversed and remanded.