(85 South. 444)

## SEARCY v. SHOWS et al.   (4 Div. 846.)

(Supreme Court of Alabama.   April 22, 1920.)

**1. Principal and surety ⬅179—Surety may file bill to compel debtor to exonerate him.**

The surety, after the debt for which he is liable has become due, without paying or being called on to pay, may file bill in equity to compel the principal debtor to exonerate him from liability by its payment, a principle which extends to cases of pledged or mortgaged property.

**2. Principal and surety ⬅174 — Surety has right of action for reimbursement on payment, or, by contract, before payment.**

On payment by a surety of the debt for which he is bound, it being due, a right of action for reimbursement arises in his favor against the principal, and in the absence of express agreement the law implies a promise of indemnity by the principal, but, by express contract, such right of action for indemnity may be given the surety before payment.

**3. Principal and surety ⬅180—Mortgage held not to require surety to pay debt before resorting to security.**

Mortgage reciting it was given to indemnify mortgagee against loss on his part by reason of suretyship on replevin bond disclosed that the parties did not intend the surety should be required to pay the debt before resorting to enforcement of the security.

**4. Principal and surety ⬅180—Condition of mortgage to surety on replevy bond broken when principal debtor failed to pay judgment.**

When the principal debtor failed to pay final judgment against him in a replevin action, there was a breach of the condition of the mortgage given by him to the surety on his replevin bond reciting that it was given to indemnify the surety against loss.

**5. Principal and surety ⬅180—Right of action on indemnity note to surety does not depend on payment of debt.**

A note executed by the principal debtor to his surety as indemnity, payable at a certain date, establishes that the right of the surety to an action on the note is not dependent on his being compelled to pay the debt for his principal.

**6. Principal and surety ⬅190(6)—Bill to foreclose security mortgage held not to show satisfaction of mortgage debt.**

Bill of surety on replevin bond to declare his security mortgage a valid lien, to foreclose it, and to redeem from former mortgage, merely stating that, being misinformed as to the legal effect of execution of supersedeas bond in the replevy suit, the surety entered satisfaction of the mortgage of record, though nothing had been paid thereon, *held* not to show a cancellation, surrender, and satisfaction of the mortgage debt.

Appeal from Circuit Court, Crenshaw County; A. E. Gamble, Judge.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Bill by G. B. Searcy against Mary F. Shows and others to declare a mortgage a valid lien, to foreclose it, and to redeem from former mortgage. From decree sustaining demurrers to the bill, complainant appeals. Reversed and remanded.

This bill by appellant against appellee shows that the appellant became surety on a replevy bond given by George A. Miller for personal property levied upon under detinue writ; and that upon the trial of the detinue case judgment was rendered against M. F. Miller, as administratrix of the estate of G. A. Miller, deceased, for the property sued for, and against her and appellant for its alternative value.

M. F. Miller was the widow of G. A. Miller, deceased, and, having subsequently married, is respondent Mary F. Shows named in the bill. The heirs at law of said G. A. Miller are also made parties respondent.

The bill further shows that to indemnify complainant against loss, as surety upon said bond, G. A. Miller executed to him a mortgage upon the personal property and land described in Exhibit E, which is alleged to be unsatisfied and a subsisting lien on the property described therein. Said mortgage (Exhibit E) states that it was given to secure the note of $1,000, which bears even date, due October 1, 1912, and contains the further recital:

"This mortgage is given for the purpose of indemnifying G. B. Searcy against loss on his part; he having signed a replevy bond with said G. A. Miller, this the 14th day of October, 1911."

The mortgage also contains a power of sale in the event the mortgagor defaults in the payment of the indebtedness for which it was given as security. It is further alleged that complainant had no interest in the litigation in which G. A. Miller was engaged, but that the latter proposed that if complainant would become surety on said bond he would execute the mortgage referred to in the bill, indemnifying the complainant against all liability or loss he might incur thereby. An appeal was taken from the first judgment rendered, and supersedeas bond given with one Graydon as surety thereon. Complainant was informed that after the execution of said supersedeas bond he was relieved from all liability as surety on the replevin bond; and acting upon such information, nothing having been paid to him by said G. A. Miller, he marked said mortgage "satisfied" upon the margin of the record. The British & American Mortgage Company is made a party, and the bill avers that it has a superior lien to that of the mortgage set out in Exhibit E.

There is general prayer for relief, and also a prayer that the mortgage be held a valid and subsisting lien on the property, and that the same be foreclosed, and after all superior liens are satisfied that the remainder be paid over to L. M. Johnson, who recovered a judgment against complainant and G. A. Miller on said replevy bond.

Mary F. Shows alone filed demurrers to the bill upon the ground there was no equity in the bill, and that it does not appear that complainant has paid the judgment, and, further, that it appears the mortgage sought to be foreclosed was surrendered and satisfied before the filing of the bill, and that the bill does not show any mistake of fact but only a mistake of law.

Subsequent to these demurrers, the bill was amended so as to show that several months after the filing of the original bill the complainant paid to L. M. Johnson $1,225 on his liability on said judgment. Mary F. Shows refiled the same demurrers to the bill as amended. The chancellor sustained the demurrers to the bill as amended, and from this decree complainant prosecutes this appeal.

F. B. Bricken, of Luverne, and John R. Tyson, of Montgomery, for appellant.

The original bill contains equity. 164 Ala. 305, 51 South. 338; 145 Ala. 176, 39 South. 913, 117 Am. St. Rep. 31, 8 Ann. Cas. 78; 86 Ala. 138; 27 A. & E. Ency. of Law, 475, note 14. Nothing short of a release for a consideration would discharge the mortgage debt, and therefore the other demurrers are speaking demurrers. 115 Ala. 258, 22 South. 81; 121 Ala. 505, 25 South. 612. The point taken by the chancellor was not raised by demurrers and he therefore erred. Sections 3121 and 5340, Code 1907; 164 Ala. 331, 50 South. 1015.

Powell & Hamilton, of Greenville, for appellees.

The original bill was demurrable. 176 Ala. 122, 57 South. 472; 77 Ala. 567; 64 Ohio St. 236, 60 N. E. 295, 83 Am. St. Rep. 745; 100 Fed. 545, 40 C. C. A. 530. The amendment did not cure the defect in the original bill, since it set up matters occurring after the original bill was filed. 19 Ala. 298; 30 Ala. 334; 63 Ala. 595; 113 Ala. 383, 21 South. 81. Having satisfied the mortgage through mistake, it cannot now be foreclosed. 29 Ala. 233; 51 Ala. 151; 149 Ala. 151, 42 South. 683.

GARDNER, J. [1] The equity of the original bill may well be rested upon the principle found stated in the following quotation from Thomas v. St. Paul M. E. Church, 86 Ala. 138, 5 South. 508:

"No principle of equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying, or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability by its payment, provided no rights of

the creditor are prejudiced thereby. The principle has been extended to cases of pledged or mortgaged property. * * * The right of the surety to be exonerated from liability is founded on equitable principles—the primary duty of the principal to pay the debt, and it being unreasonable that the surety should be burdened with the liability, a cloud hanging over him, at the will of the creditor, and the risk of ultimate loss. The doctrine has been expressed by Lord Redesdale as follows: 'A court of equity will also prevent injury in some cases, by interposing before any actual injury has been suffered, by a bill which has sometimes been called a bill quia timet, in analogy to proceedings at the common law, where, in some cases, a writ may be maintained before any molestation, distress, or impleading.' "

This principle has found frequent reiteration in subsequent decisions of this court. West Huntsville Cotton M. Co. v. Alter, 164 Ala. 305, 51 South. 338; Tillis v. Folmer, 145 Ala. 176, 39 South. 913, 117 Am. St. Rep. 31, 8 Ann. Cas. 78; Hudson Trust Co. v. Elliott, 194 Ala. 441, 69 South. 631. And to like effect, see, also, 1 Story's Eq. Jur. (13th Ed.) § 327; 2 Story's Eq. Jur. (13th Ed.) § 730; Brandt on Suretyship & Guaranty, vol. 1, §§ 245, 246; West v. Chasten, 12 Fla. 315; De Cottes v. Jeffers Cothran & Co., 7 Fla. 284.

[2] Counsel for appellees rely upon the well-recognized general rule as stated in Lane v. Westmoreland, 79 Ala. 372, and quoted in Cooper v. Parker, 176 Ala. 122, 57 South. 472, to the effect that a surety cannot recover indemnity from the principal or indemnitor until he has paid the debt. Upon the payment by the surety of the debt, for which he is bound, it being then due, a right of action for reimbursement arises in his favor against the principal, and in the absence of an express agreement the law implies a promise of indemnity on the part of the principal. Brandt on Suretyship & Guaranty, § 226. Yet, by express contract, such right of action for indemnity against the principal may be given before the payment of the debt. Id. §§ 242, 243. However, the general rule above referred to does not militate against the well-recognized principle found stated in the quotation from the Thomas Case, supra, to the effect that, if the debt for which the surety is liable has become due, he may, without paying the debt, file a bill in equity to compel its payment by the principal, and thereby be exonerated from liability thereon. He does not in such bill seek to recover indemnity from the principal, but merely to compel the principal to pay the debt for which he is primarily liable, and thus relieve the surety who is only secondarily liable therefor. In giving effect to this doctrine there need be no risk either to the principal or to the creditor, for a court of equity will protect the interests of both in the application of the funds. As pointed out in Cooper v. Parker, supra, it is "clear that the mort-

gagor-principal would have an equity to have the fund so realized applied to the principal debt, if he still remained liable' thereon." See, also, De Cottes v. Jeffers Cothran & Co., supra. Many cases are cited in the note to section 245 of Brandt on Suretyship & Guaranty, and in section 246 of the same work, as directly applicable here, is the following:

"A surety or guarantor who holds a mortgage on the property of his principal may, after the maturity of the debt, and before paying it, have the mortgage foreclosed, and the proceeds thereof applied to the payment of the debt."

This is what is sought by the original bill —to compel the payment of the amount due by the principal debtor, and to have the mortgage foreclosed and the proceeds of sale applied in the extinguishment of the debt for which the complainant is surety.

[3-5] Furthermore, under the previous decisions of this court, the mortgage given complainant very satisfactorily discloses upon its face that the parties did not intend the surety should be required to first pay the debt before resorting to the enforcement of the security. The mortgage recites that it was given to indemnify the mortgagee against loss on his part by reason of the suretyship on the replevy bond. This condition was broken when the principal debtor failed to pay the final judgment rendered, for, as said in Daniel v. Hunt, 77 Ala. 567, "when this happened, there was, in legal contemplation, a loss to the surety, who was personally bound for the payment of the debt. * * * The word 'loss,' here, means nothing more than legal damage, detriment, or forfeiture." The principal also executed his note in a fixed sum due upon a certain date, and the mortgage was given to further secure the same. In Russell v. La Rogue, 11 Ala. 352, it was held that a note executed by the principal to the surety as indemnity, payable at a certain date, established "very satisfactorily that the right of the surety to an action on the note was not to depend on his being compelled to pay the debt for his principal," and in this respect the La Rogue Case was followed in Cooper v. Parker, supra.

We are therefore of the opinion that the bill as originally filed contained equity, and that the amendment which disclosed that subsequent to the filing of the original bill complainant had paid the judgment was not essential to its equity, but was properly averred as affecting the application of the funds upon the rendition of the final decree.

[6] The remaining assignment of demurrer is argued by counsel for appellees upon the assumption that the bill shows complainant had satisfied, canceled, and surrendered the mortgage to the mortgagor. The bill, however, does not so aver, but merely states in substance that being misinformed as to the legal effect of the execution of the super-

sedeas bond, and for this sole reason, he entered satisfaction upon the margin of the record, although nothing had been paid thereon. Clearly, this does not show a cancellation, surrender, and satisfaction of the mortgage debt. This assignment was not well taken.

It results that the court below committed error in sustaining the demurrer to the bill as amended, and the decree will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.