(118 So. 633)

**SEGALL et al. v. LOEB et al.** (3 Div. 838.)

Supreme Court·of Alabama. June 28, 1928.

Rehearing Granted Oct. 25, 1928.

Rehearing Denied Nov. 30, 1928.

Hill, Hill, Whiting, Thomas & Rives, of · Montgomery, for appellants.

434

Steiner, Crum & Weil, of Montgomery, for appellees.

BROWN, J. To state the substance of the averments of the bill as pertinent to the questions presented for decision: On October 16, 1925, Fleming-Green Company, Inc., and for some time prior thereto, was engaged in the business of manufacturing and selling mayonnaise and other like products, under the trade-name of "Piknik," and had established an extensive business and good will with .customers in several of the states; its products being sold to retail merchants for resale to their customers.

The appellants Nathan Segall and H. H. Green owned the entire capital stock of the corporation, consisting of 45 shares of the par value of $100, and, up to the time the contract now involved was entered into, were in full control, as officers of the corporation, of the corporate business, and the corporation under their management had incurred certain liabilities, recognized to be just by the appellants.

On the date above mentioned appellants, for a valuable consideration, sold the stock of the corporation to the complainants, Victor Loeb, Raphael J. Loeb, and Milton J. Winter, the contract for the sale of said stock being evidenced by written contract, attached to. and made an exhibit to, the bill. Attached to the contract and made a part thereof is a schedule of the assets of the corporation and its liabilities as then recognized by the appellants, and certain provisions in the contract are made for full liquidation and settlement of these recognized liabilities.

The contract which designates appellants as the parties of the first part and the Loebs and Winter as parties of the second part stipulates:

"Parties of the first part, as officers of the corporation, have caused the books of the corporation to be closed and a trial balance taken as of October 10, 1925, and there is attached hereto and made a part hereof said trial balance which is marked Exhibit D. There is also attached hereto, marked Exhibit F and G respectively, itemized statements showing the bills payable and accounts payable by the corporation. Parties of the first part represent to parties of the second part that the said trial balance is a true and correct one, and shows the true and correct condition of the business of the corporation as of October 10, 1925, and they represent that the total amount shown to be due and owing by the corporation, to wit, accounts payable, $5,044.81, notes or bills payable, $3,300, and discount due, $281.87, *is all of the indebtedness and liability owing or due or incurred by the corporation at that time; and they further represent that the corporation has no indebtedness or liability other than as so shown. If said corporation has at this time any other indebtedness or liability than as so shown, whether it* be for taxes, license, income tax, *claims for reclamations on account of goods shipped and not complying with contract, or any other liability whatsoever,* either in tort or contract, *they will pay and discharge the same, and hold the corporation and parties of the sec-*

*ond part harmless as against the payment thereof."* (Italics supplied.)

"It is further agreed, however, that nothing contained as to the payment of the indebtedness and liabilities of the corporation, as shown by the exhibits, shall be construed to relieve parties of the first part of their undertaking and guaranty set forth that said exhibits show all the debts and liabilities of the corporation, and their agreement to pay any other liability or indebtedness, however evidenced, not shown by said books of said corporation or said exhibits."

"Parties of the first part agree that they will each lend their good will to the future of the business of the corporation, and will give to its new officers such information they may have regarding the conduct of the business while administered by them, it being understood, and parties of the first part agree that in making the sale and transfer of said stock, it is done with the intent and purpose that parties acquire and take over the good will of the business and that neither of the first parties will do anything to prevent the full enjoyment of such good will by parties of the second part in carrying on said business in the future."

The bill avers:

That, since the purchase of said stock and the management of said corporate business has been taken over by the Loebs and Winter, numerous customers named in the bill, who had been doing business with said corporation under the management of appellants, have made claims against the corporation, and insist that said corporation is indebted to them, and are threatening suits thereon against the corporation, and it is being continually annoyed and harassed by said claimants; that other customers to whom it has sold goods, since said contract was made, have, over the protest of the corporation, deducted the amount of claims, asserted to have arisen while appellants were in charge, from the price of the goods so sold, and refuse to pay the full amount due for the goods sold since said contract was made; that substantially all of said claims "are asserted to be for reclamation on account of goods shipped by the corporation, and not complying with the contract of purchase, none of which were listed in said agreement as debts or liabilities of the corporation.

"Complainants further aver that it appears from the wording of said agreement so entered into between complainants and said Segall and Green, and it was so intended by the parties, that complainants Victor Loeb, Raphael J. Loeb, and Milton J. Winter *would continue to conduct the business of said corporation in order to reap the benefit of the good will of said corporation, and said Segall and Green knew that a large number, if not all, of the said persons, firms, or corporations above named were making claims against said corporation, and that, if the corporation continued to deal with them, the several claimants, or some of them, would deduct the amount claimed from the purchase price of any goods shipped to them respectively by the corporation; but, notwithstanding this fact, said Segall and Green represented in said agreement of sale that the debts and liabilities of the corporation as scheduled or stated in said agreement were all the debts and liabilities of the corporation,* and, acting on said representation, complainants Victor Loeb, Raph-

ael J. Loeb and Milton J. Winter, in continuing the business of said corporation, did cause shipments of goods to be made to several claimants as aforesaid, and as a result thereof complainants were damaged to the extent of the several amounts deducted by the said several named persons, firms, or corporations, as alleged." (Italics supplied.)

The bill is here filed by the corporation, Fleming-Green Company, Inc., Victor Loeb, Raphael J. Loeb, and Milton J. Winter, against the appellants Segall and Green, and the several customers of the corporation, who are claiming that the corporation is indebted to them, and to compel Segall and Green to pay such of said claims as are ascertained to be due, in specific performance of their contract, and for general relief.

The demurrers to the bill assert that the complainants Loeb, Loeb, and Winter have a complete and adequate remedy at law, and therefore the bill is without equity; that Fleming-Green Company, Inc., is not a party to the contract, and is improperly joined as a party complainant; that the averments of the bill do not show that the asserted claims by the alleged customers of the corporation are legal liabilities within the terms of the contract; that the bill is multifarious, and the alleged claimants are improperly joined as parties defendant.

■■ "In equity the court adapts its relief to the exigencies of the case in hand, and in so doing form always gives way to substance, or as the principle is expressed in the shape of an equitable maxim 'equity looks through form to substance,' or 'equity regards the substance and not the form of a transaction or proceeding.'" 10 R. C. L. p. 380, § 130; Zeiser v. Cohn, 207 N. Y. 407, 101 N. E. 184, 47 L. R. A. (N. S.) 186, Ann. Cas. 1914C, 493. So, in the case of written instruments, the form is not always controlling, but courts of equity will seek rather to discover and carry into effect the real intention of the parties and to enforce it according to the spirit of the transaction. 10 R. C. L., supra; Ogden v. Stevens, 241 Ill. 556, 89 N. E. 741, 132 Am. St. Rep. 237; Dunham v. Chatham, 21 Tex. 231, 73 Am. Dec. 228.

■ Under the terms of the contract, appellants not only engaged to pay and discharge all debts and liabilities against Fleming-Green Company, Inc., not disclosed in the schedules attached to the contract, but, according to the averments of the bill, with the knowledge that other claims would be made by the customers of the corporation arising out of sales made by the corporation while appellants were in control, they represented that no such claims existed, and warranted to hold the corporation and the purchasers of the capital stock harmless from any such claims. And in making the sale and transfer of the stock, for the consideration paid, to state it in the language of the parties, it was "with the intent and purpose that the parties of the sec-

ond part acquire and take over the good will of the business, and that neither of the parties of the first part (appellants) will do anything to prevent full enjoyment of said good will by parties of the second part in carrying on said business in the future."

This engagement by appellants was for the primary benefit of Fleming-Green Company, Inc., and its legal effect, as between the parties, was to substitute appellants as the parties primarily liable for all debts of the corporation not disclosed in the negotiations and stated in the contract; Fleming-Green Company, Inc., remaining liable as a quasi surety. People's Savings Bank of Tallassee et al. v. Jordan, 200 Ala. 500, 76 So. 442; Mitchell v. Hickman, 208 Ala. 344, 94 So. 284; Eppes v. Thompson, 202 Ala. 145, 79 So. 611; Tillis v. Folmar, 145 Ala. 176, 39 So. 913, 117 Am. St. Rep. 31, 8 Ann. Cas. 78.

■ As before stated, the prayer of the bill is to compel the defendants to pay▸ such of said claims as are ascertained to be due, in specific performance of their contract, and to this end the complainants must not only allege, but prove, that said claims constitute legal liabilities against the corporation, arising out of contracts made while the defendants were in charge of the business as officers or agents of the corporation, for the right of the surety to be exonerated from liability is founded on the equitable principle that the persons primarily liable for the debt should' pay and relieve the surety from the burden and the cloud hanging over him, at the will of the creditor, with the risk of ultimate loss. Thomas v. St. Paul's M. E. Church, 86 Ala. 138, 5 So. 508; Tillis v. Folmar, supra; West Huntsville Cotton Mill Co. v. Alter, 164 Ala. 305, 51 So. 338; Gresham v. Ware, 79 Ala. 192. Therefore, after more mature consideration, we are of the opinion that the bill is subject to the defect pointed out in the thirteenth ground of demurrer, and that demurrer should have been sustained.

■ The authorities, in abundance, sustain the proposition that a third party for whose benefit a contract is made may maintain an action thereon (Meyerson v. New Idea Hosiery Co. [Ala. Sup.] 115 So. 94;[1] Fite v. Pearson, 215 Ala. 521, 111 So. 15; Ala. City, G. & A. R. Co. v. Kyle, 204 Ala. 597, 87 So. 191), and that such third person may compel specific performance in equity (Pom. on Specific Performance, § 486; Smith v. Smith, 5 Bush [Ky.] 625; Seaver v. Ranson et al., 224 N. Y. 233, 120 N. E. 639, 2 A. L. R. 1187, and note 1193).

■ The relief sought here is predicated on a single contract, and the several claims arising out of the transaction between Fleming-Green Company, Inc., and its customers, while the appellants were in control, are covered by the contract which the bill seeks to enforce. The bill, therefore, is not subject to the objection that it is multifarious. Code of 1923, § 6526; Forcheimer v. Foster and Bodden v. Foster, 192 Ala. 218, 68 So. 879.

■■ Nor can appellants complain on this ground that the several claims covered by the contract are incidentally involved (Ellis v. Vandergrift et al., 173 Ala. 142, 55 So. 781), nor on the ground that such claimants are improperly joined (Bolling & Son v. Vandiver & Co., 91 Ala. 375, 8 So. 290; Martin v. Campbell, 207 Ala. 505, 93 So. 477).

It has been held that the creditors to whom the claims are payable are not only proper, but necessary, parties. Croone v. Bivens, 2 Head (Tenn.) 339; Call v. Scott, etc., 4 Call (Va.) 402; Stephenson v. Taverners, 9 Grat. (Va.) 398.

For the error pointed out, the decree of the circuit court will be reversed.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.

