142 So. 568

**ALABAMA BANK & TRUST CO. et al. v. GARNER.**

4 Div. 568.

Supreme Court of Alabama.

May 12, 1932.

Rehearing Denied June 18, 1932.

Steiner, Crum & Weil, of Montgomery, and Chas. O. Stokes, of Ozark, for appellants.

Sollie & Sollie, of Ozark, for appellee.

BROWN, J.

The bill is by the appellee, W. S. Garner, against R. W. Garner, Capital National Bank, Alabama Bank & Trust Company, M. A. Vincentelli, and Morris Josephs, seeking to be relieved of liability on two promissory notes executed by said R. W. Garner, doing business as Garner Motor Company, to the Alabama Bank & Trust Company, the first note bearing date December 19, 1921, for $2,000, payable ninety days after date, and indorsed by the complainant by writing his name on the back, with waiver of demand, protest, and notice, and all rights of exemption under the laws of Alabama; the other for $3,000, bearing date March 6, 1922, due ninety days after date, indorsed by the complainant by writing his name on the back of the note under the following agreement: "We the endorsers hereby severally waive all rights to exemption under the Constitution and laws of Alabama, and waive protest and notice thereof. And also agree to each provision in the face of this note." In the body of each of said notes is the following stipulation: "And we, and all endorsers hereof, hereby declare and contract with the payee and holder hereof that there is no contract or understanding made or had by us or either of us with the payee or any other person which in any manner limits or affects our liability on this paper," etc.

To state briefly the facts, about which there is no dispute in the evidence, the respondent R. W. Garner, who lived at Ozark in Dale county, in the year 1919, commenced to do an automobile business in Montgomery as the Garner Motor Company, placing Josephs in full charge as manager with power of attorney, authorizing the borrowing of money and the execution of notes, etc. The purpose and scope of the business was to purchase, trade in, sell, and distribute automobiles, their parts and accessories, and operate a garage for the repair of automobiles.

Some time in the year 1920, said R. W. Garner, through his said manager, applied to the Capital National Bank of Montgomery, through its vice president, Vincentelli, for financial assistance to aid him in the conduct of said business so that he could pay cash for new automobiles purchased and shipped on draft with bills of lading attached. And it was arranged with the bank to make loans on notes given by the Garner Motor Company, with a lien on or pledge of the cars as they were paid for with money so furnished. As the cars were sold by the motor company, if on credit the purchase-money notes given by the purchaser were substituted as collateral in lieu of the car, to secure the payment of the note given for the loan in each particular case, the principal note carrying a provision that if more was realized out of the collateral notes than was necessary to discharge the particular debt arising from the loan, the bank reserved the option to apply the surplus on any other debt due from the maker of the principal note.

In addition to the collateral the bank required the motor company to give a surety company bond in the sum of $10,000, conditioned for the faithful accounting to the bank for the collaterals and proceeds of all cars sold.

In December, 1920, a checking of cars sold or disposed of by the company developed the fact that the motor company had failed to account for the proceeds or the collateral taken for some of the cars, constituting a breach of the surety bond. The bank thereupon demanded of the motor company that it pay the notes given for such unaccounted for cars, or strengthen its security therefor. The motor company was indebted at that time in the sum of from $9,000 to $10,000.

R. W. Garner thereupon executed a note for $5,000, in the name of Garner Motor Company, and procured the indorsement thereof by the complainant, and on this note the bank advanced to the Garner Motor Company, less discount, the sum of $5,000 in cash, which was placed to the credit of the company, and checked out, part being used in payment of the deficit for the cars unaccounted for, and the balance in the usual course of business.

Thereafter, the interest was paid and renewal notes given, dividing the amount into two parts, one for $2,000 and the other for $3,000, indorsed by the complainant. This indebtedness was carried by requiring renewal notes from time to time, with like indorsements up to the time the notes in question were given.

The complainant in his bill submits himself to the jurisdiction of the court and offers to do equity, and asserts, first, that he

as a surety· of the said R. W. Garner has a right to come into a court of equity, and not only compel his principal to pay the indebtedness, but to compel the creditor to pursue his principal to exhaustion before it has the right to call on him for payment.

"No principle is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying or being called on to pay it, may file a bill in equity in the nature of a bill quia timet to compel the principal debtor to exonerate him from liability by its payment, *provided no rights of the creditor are prejudiced thereby.* And in order to maintain such bill it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss. When a surety comes into a court of equity to compel the principal to pay the debt, *he stands in the position of an equitable assignee and may use the remedies of the creditor at his own risk and cost.*" (Italics supplied.) 21 R. C. L. p. 1110, § 146; Tillis et al. v. Folmar, 145 Ala. 176, 39 So. 913, 117 Am. St. Rep. 31, 8 Ann. Cas. 78; Segall et al. v. Loeb et al., 218, Ala. 433, 118 So. 633.

██ While the creditor may not be a necessary party to the suit, he is at least a proper party that he may "be at hand to receive the money," but unless some other ground for equitable relief is shown authorizing affirmative relief against the creditor, no affirmative relief can be granted as against him. Abercrombie v. Knox, Snodgrass et al., 3 Ala. 728, 37 Am. Dec. 721; Croone v. Bivens, 2 Head (Tenn.) 339; Call v. Scott, 4 Call (Va.) 402; Stephenson v. Taverners, 9 Grat. (Va.) 398; Neal et al. v. Buffington et al., 42 W. Va. 327, 26 S. E. 172.

█ As between the principal and surety the liability of the principal is primary and that of the surety is secondary, still they are jointly and severally liable to the creditor, and their liability to him is primary. Saint v. Wheeler & Wilson Mfg. Co., 95 Ala. 372, 10 So. 539, 36 Am. St. Rep. 210; Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271.

█ In Hudson Trust Co. v. Elliott, 194 Ala. 441, 69 So. 631, and Searcy v. Shows et al., 204 Ala. 218, 85 So. 444, the right to relief rested upon special equities other than the mere right of the surety or indorser to compel the principal to pay the debt. In the first case the creditor had a lien on the property of the principal which it was refusing to enforce, and in the other the creditor held a mortgage against the principal, and it was held that the surety had a right to enforce these liens for the satisfaction of the principal debt, and in discharge of the liens on the property of the surety.

In the instant case, as related to the question now under consideration, the creditor has no other security than the liability of the complainant as surety or indorser, and has no independent lien on the property of the principal. In fact, it clearly appears that the principal, R. W. Garner, is wholly insolvent; that numerous judgments at the suits of other creditors have been obtained against him, with the issue and return of executions nulla bona; and we are at the conclusion that complainant was not entitled to relief on this ground.

█ Nor is the complainant in position in this case to invoke the common-law principle that he as an indorser cannot be proceeded against jointly with his principal debtor. He comes into a court of equity seeking relief, and ·in connection therewith submits himself to the jurisdiction of the court and offers to do equity, and is subject to a decree declaring his liability jointly with the principal debtor, if he has not been discharged from liability on other grounds hereafter to be considered.

██ Appellee's next contention is that his signature on the notes was procured by R. W. Garner as agent of the bank, and before he indorsed the first note, said R. W. Garner represented to him and he indorsed with the understanding, that said R. W. Garner doing business as Garner Motor Company owed the bank only $7,500, that said R. W. Garner owned about or upwards of $15,000 worth of. automobiles, trucks, fixtures, parts, etc., upon which the bank had a lien or held retention of title securing the indebtedness, and it was agreed between the bank, acting through said R. W. Garner, that said securities so held by the bank should be applied first to the payment of the $5,000 note indorsed by the complainant; that this agreement was subsequently made known to the vice president of the bank, Vincentelli, who was fully authorized to confirm and ratify said agreement, and which was ratified by him; that this was the moving consideration inducing him to indorse the note; that the bank has collected and received sufficient money and property from said securities to satisfy the indebtedness represented by the notes which he indorsed.

For the purposes in hand, it may be conceded that parol evidence is admissible for showing an agreement, collateral to the notes, in respect to the applications of payments made by the principal debtor, to the effect that all such payments should be applied to the debt secured by the indorsement of the complainant, and that such evidence did not impinge the rule against varying the terms of the written contract. Brown et al. v. Scheuer, Wise & Co., 210 Ala. 47, 97 So. 50.

Still the complainant carried the burden of proof, and while he offered evidence tend-

ing. to support this theory, the respondents adduced countervailing evidence directly in conflict therewith, and after full consideration of the evidence, looking to the situation of the parties, we are of opinion that the complainant has failed to adduce sufficient, satisfactory evidence on this issue to meet and carry the burden of proof resting upon him. The weight of the evidence on this issue goes to show that said R. W. Garner was acting in his own interest, and not as agent of the bank, in order to relieve the surety bond from liability to meet the deficit resulting from failure of Garner Motor Company to fully account for cars and securities covered by said bond, and that no such agreement as alleged was made or ratified by Vincentelli, or the bank.

The foregoing also answers the third and fourth contentions of the complainant, as to the application of payments from other securities or cars sold by Garner Motor Company.

The bank was not a party to the contract between R. W. Garner and Josephs, of December 30, 1921, whereby Garner took charge of part of the property to be disposed of and applied on his personal note for $2,000, and Josephs agreed, as between Garner and himself, to assume the payment of $7,000 to the bank out of property left in his possession, and to retain any surplus for his services. The legal effect of this was to constitute Josephs the agent and trustee of R. W. Garner to dispose of the property left in his hands, and apply the proceeds to the liquidation of the claims and debts previously secured by that property. This was clearly an arrangement between R. W. Garner and Josephs, with which the bank had nothing to do, and if Josephs has abused the trust, that is a matter between R. W. Garner and Josephs.

■ The last proposition to be disposed of relates to the liability of the appellee to account for the value of the Cole car, constituting a part of the stock in trade of the Garner Motor Company, on which the bank had a lien. There is practically no dispute in the evidence that this car was turned over to appellee, W. S. Garner, by Josephs, with the consent of the bank to be sold and the proceeds accounted for. Said W. S. Garner, after making some effort to sell the same, allowed his brother, R. W. Garner, who is insolvent, to take possession of the automobile and keep and use it as his own. `This was clearly a breach of the duty of his agency by the said W. S. Garner, and he should account for its reasonable market value at the time he parted with its possession.

The foregoing is sufficient to indicate our opinion that the decree of the circuit court is laid in error, and must be reversed, and a decree will be here rendered denying the complainant relief, and granting relief to the appellant, Alabama Bank & Trust Company, under its cross-bill.

The decree of the circuit court is therefore reversed, and a decree here rendered denying the complainant relief as against the appellant Alabama Bank & Trust Company, and dismissing the bill as to M. A. Vincentelli and Morris Josephs, and granting relief to the appellant Alabama Bank & Trust Company on its cross-bill against the respondents to the cross-bill R. W. Garner and W. S. Garner, for the balance due on the two notes indorsed by W. S. Garner, with interest from maturity, less credit of $300 paid by W. S. Garner on April 4, 1923, the balance of which is ascertained to be $8,558.13, to which is added the sum of $500 as solicitor's fee, the amount claimed and covered by the provisions in the note of March 6, 1922, which provides for 10 per cent. attorney's fee, making a total of $9,558.13. In the notes evidencing this indebtedness, the parties waived their rights of exemption as to personal property, and this waiver will be carried into the decree.

The said W. S. Garner is also liable for the value of the Cole automobile, the value of which is ascertained to be $1,000, with interest thereon from the date of filing the original bill to the date of this decree, aggregating, principal and interest, $1,696.68.

The appellant bank is also entitled to a decree against R. W. Garner for the balance due on his note dated January 5, 1922, with interest from date, less credits; calculating the interest on the partial payment plan, this amount is ascertained to be $2,277.-36; and on the note of September 21, 1921, with interest from date, less credit of $700 paid May 31, 1922, the amount of which is ascertained to be $175.70, making a total indebtedness of said R. W. Garner not secured by indorsement, $2,452.06, with waiver of exemption as to personal property.

W. S. Garner and R. W. Garner will pay the costs of the suit and the appeal.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.