105 So.2d 83

**T. E. DOSTER**

v.

**CONTINENTAL CASUALTY COMPANY.**

**6 Div. 270.**

Supreme Court of Alabama.

Sept. 11, 1958.

Ralph B. Tate and John P. Ansley, Birmingham, for appellant.

London, Yancey, Clark & Allen, Jas. E. Clark, Birmingham, for appellee.

MERRILL, Justice.

This is an appeal from a decree overruling demurrers to the amended bill and its several aspects, denying a motion to dissolve an injunction issued in the cause, and denying a motion to discharge the injunction.

Appellee, sometimes hereafter referred to as Continental, filed this bill for exoneration of surety against appellant Doster alleging, that Respondent had been awarded a contract by the Board of Education of Birmingham to construct the North Roebuck School; that Complainant became his surety on the performance and payment bonds required by Tit. 50, § 16,. Code 1940; that two days after the execution of the bonds wherein it became surety for Doster that Doster executed a contractual agreement with Continental giving unto Continental "certain rights of subrogation and indemnity" and attached the agreement as an exhibit to the bill; that Doster, having virtually completed his construction contract, declared to Continental that he was in default because of his inability to pay for materials and supplies used on the North Roebuck School job, and that he advised that his unpaid obligations totaled over $24,000; that materialmen were making demand on Continental for payment; that Doster was in a state of default under his bond with Continental; that Doster had represented that he had over $21,000, but that he refused to pay the materialmen on the school job whose accounts were past due and that Doster had represented that the "bulk of the monies which he has on hand" was received from the School Board in payment to him of estimates on the bonded job; that by reason of Doster's refusal to pay the materialmen that Continental was thereby exposed to substantial expense and liability for which it was secondarily liable; that if Doster did not promptly pay the materialmen that it was liable to them, and its liability being secondary, that Doster should use the cash he had on hand to pay these bills; that it was entitled to exoneration; that irreparable injury will be done it if the Court "does not marshal the assets of the respondent" for the purpose of retiring Doster's obligations to materialmen; and should he be allowed "to expend the assets which he has on hand for other purposes", that "substantial injustice and irreparable injury" will be done Continental in the event the Court does not aid it in having Doster's earnings on the school job used to pay materialmen, and also if Doster's assets "are not ordered to be *sequested* and protected"

by the Court for the payment of any ultimate liability of Continental's by reason of the suretyship relation and the provision for indemnity.

Continental offered to do equity and "makes no effort to avoid its secondary liability to the materialmen for the reasonable value of materials and labor furnished for the construction of North Roebuck School which have not been paid for."

The prayer of the bill was that the Court on final hearing order (1) all cash monies or liquid securities which Doster has on hand, and particularly any funds received from the school job, be applied in payment of Doster's bills on the school job and (2) that if his assets "are not sufficient" to pay these bills then that Doster "be required to protect and secure and indemnify" Continental "by a transfer of all of his assets" not subject to exemption over to Continental. The bill also prayed for a temporary injunction and the injunction granted conformed to the prayer for the injunction.

The contractual agreement, in part, provides that Doster will indemnify Continental "against all loss, costs, damages * * * and any and all liability therefor, sustained * * * by reason of executing of said bond * * *." It also provided that Doster "assign, transfer, and set over, and does hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein * * * such assignment to become effective as of the date of said contract bond but only in event of (1) any abandonment, forfeiture or breach of said contract or of any breach of said bond * * * (a) Any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such * * * breach, or that thereafter may become due; * * *."

The bill was amended, additional grounds of demurrer filed and the court decreed:

"1. That the amended motion to dissolve the injunction be and the same is hereby denied;

"2. That the motion to discharge the injunction be and the same is hereby denied;

"3. That the amended demurrer addressed to each and every aspect of the amended bill of complaint, separately and severally, be and the same is hereby overruled, separately and severally, to each and every aspect of said amended bill of complaint."

The only assignment of error which is argued charges that the court erred in overruling the demurrer to the bill as last amended.

Appellant argues that it is necessary for complainant to allege either insolvency or fraud, or both in its bill and urges "that before an injunction should be granted and before he should be enjoined from conveying, selling, trading or otherwise using his assets, the surety should allege that he is insolvent or that he is attempting to dispose of his assets to the detriment of the surety."

We do not find that our cases so hold. A surety's right of exoneration is established by our decisions, which are reviewed in Searcy v. Shows, 204 Ala. 218, 85 So. 444, 445, where it was said:

"The equity of the original bill may well be rested upon the principle found stated in the following quotation from Thomas v. St. Paul's M. E. Church, 86 Ala. 138, 5 So. 508:

" 'No principle of equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying, or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby. The principle has been extended to cases of pledged or mortgaged property. * * * The right of the surety to be exonerated from liability is founded on equitable principles—the primary duty of the principal to pay the debt, and it

being unreasonable that the surety should be burdened with the liability, a cloud hanging over him, at the will of the creditor, and the risk of ultimate loss. The doctrine has been expressed by Lord Redesdale as follows: "A court of equity will also prevent injury in some cases, by interposing before any actual injury has been suffered, by a bill which has sometimes been called a bill quia timet, in anology to proceedings at the common law, where, in some cases, a writ may be maintained before any molestation, distress, or impleading." '

"This principle has found frequent reiteration in subsequent decisions of this court. West Huntsville Cotton M. Co. v. Alter, 164 Ala. 305, 51 So. 338; Tillis v. Folmar, 145 Ala. 176, 39 So. 913, 117 Am.St.Rep. 31, 8 Ann.Cas. 78; Hudson Trust Co. v. Elliott, 194 Ala. 441, 69 So. 631. And to like effect, see, also, 1 Story's Eq.Jur. (13th Ed.) § 327; 2 Story's Eq.Jur. (13th Ed.) § 730; Brandt on Suretyship & Guaranty, vol. 1, §§ 245, 246; West v. Chasten, 12 Fla. 315; DeCottes v. Jeffers Cothran & Co., 7 Fla. 284.

"Counsel for appellees rely upon the well-recognized general rule as stated in Lane v. Westmoreland, 79 Ala. 372, and quoted in Cooper v. Parker, 176 Ala. 122, 57 So. 472, to the effect that a surety cannot recover indemnity from the principal or indemnitor until he has paid the debt. Upon the payment by surety of the debt, for which he is bound, it being then due, a right of action for reimbursement arises in his favor against the principal, and in the absence of an express agreement the law implies a promise of indemnity on the part of the principal. Brandt on Suretyship & Guaranty, § 226. Yet, by express contract, such right of action for indemnity against the principal may be given before the payment of the debt. Id. §§ 242, 243. However, the general

rule above referred to does not militate against the well-recognized principle found stated in the quotation from the Thomas Case, supra, to the effect that, if the debt for which the surety is liable has become due, he may, without paying the debt, file a bill in equity to compel its payment by the principal, and thereby be exonerated from liability thereon. He does not in such bill seek to recover indemnity from the principal, but merely to compel the principal to pay the debt for which he is primarily liable, and thus relieve the surety who is only secondarily liable therefor. In giving effect to this doctrine there need be no risk either to the principal or to the creditor, for a court of equity will protect the interests of both in the application of the funds."

See 50 Am.Jur., Suretyship, § 225, p. 1051; and § 227, p. 1053; 72 C.J.S. Principal & Surety § 303, p. 759; Stearn's Law of Suretyship, 5th Edition, § 11.38, p. 515. The principle is again stated in Alabama Bank & Trust Co. v. Garner, 225 Ala. 269, 142 So. 568, 570, with the following addition:

" 'And in order to maintain such bill it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss. When a surety comes into a court of equity to compel the principal to pay the debt, *he stands in the position of an equitable assignee and may use the remedies of the creditor at his own risk and cost.*' (Italics supplied.) 21 R.C.L. p. 1110, § 146; Tillis et al. v. Folmar, 145 Ala. 176, 39 So. 913, 117 Am.St.Rep. 31, 8 Ann.Cas. 78; Segall et al. v. Loeb et al., 218 Ala. 433, 118 So. 633."

The requirements of our cases for a bill of exoneration are more than met in the bill in the instant case in that:

(1) The relationship of surety and principal is alleged.

(2) It is averred that the respondent had, in substance, declared himself in default under his bond by reason of his inability and failure to make payment of the bills of materialmen who had furnished material and supplies for the construction of the North Roebuck School on which the complainant was the contractor's surety.

(3) It is averred that numerous of the materialmen who had furnished the project had made demand upon the complainant, Continental Casualty Company as surety, for payment under the terms of the performance and labor and material payment bond which the surety had executed on the respondent as principal pursuant to the provisions of § 16 of Title 50 of the Code of Alabama of 1940.

(4) Averments are made concerning the financial status of the respondent, including his possession and control of substantial funds collected as earnings off of the construction of the job bonded by the complainant, and the refusal of the respondent to use same for the payment of the material bills incurred on the project.

(5) The Complainant in the bill offers to do equity and avers that it makes no effort to avoid its secondary liability to the materialmen for the reasonable value of materials and labor furnished for the construction of the North Roebuck School, for which the materialmen would be entitled to recover from the complainant as surety pursuant to the aforesaid public works statute, and further avers that equity, good conscience and simple honesty dictate and require that the respondent be made to fulfil his obligations to the extent that he is reasonably able, and that the complainant, as his surety, be permitted exoneration to the extent that the materialmen and obligee under the bond for the construction of the North Roebuck School will not be prejudiced on any valid and legitimate claims possessed by them.

These allegations, buttressed by exhibits attached to the bill, present a case of equitable relief. The trial court properly overruled the demurrer and the decree is affirmed.

Affirmed.

LAWSON, STAKELY and COLEMAN, JJ., concur.